UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ERIKA BARKER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ABC PHONES OF NORTH CAROLINA<br>d/b/a VICTRA, a North Carolina corporation,<br><br>Defendant. | Civil Action No. 3:22-cv-00611 |

**COMPLAINT AND JURY DEMAND**

Plaintiff Erika Barker ("Barker"), in support of her Complaint against Defendant ABC Phones of North Carolina, Inc. d/b/a Victra ("Victra"), hereby states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUEEQU**

2. Barker is an individual residing in Bayfield, Bayfield County, Wisconsin.

3. Victra is a North Carolina corporation with its principal place of business in Raleigh, Wake County, North Carolina. Victra is authorized to conduct business in Wisconsin and may be served through its registered agent located in Madison, Wisconsin.

4. Jurisdiction is proper pursuant to the Equal Pay Act of 1963 (Pub. L. 88-38) (the "EPA"), 29 U.S.C. § 206(d), and therefore, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5. This Court may exercise personal jurisdiction over Victra based upon its presence within this judicial district, including the discriminatory conduct directed to an individual located in Wisconsin, and its transaction of business and other activities within the Western District of Wisconsin.

6. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims set forth in this Complaint occurred within the judicial district.

**FACTUAL BACKGROUND**

7. Victra, formerly known as A Wireless, is an authorized Verizon Wireless retailer with retail stores located across 49 states, including 45 stores located in Wisconsin alone, offering a wide range of products and services that include wireless devices, technology support, product insurance, and mobile broadband.

8. In 2009, Barker began her employment with Pearce Wireless as a Sales Representative in Amery, Wisconsin, and later transferred her job location to a Pearce Wireless store in Chetek, Wisconsin.

9. In May 2010, Barker was promoted to Store Manager of the Ashland, Wisconsin location.

10. In 2013, Z Wireless purchased Pearce Wireless and absorbed its employees—including Baker. In 2015, Z Wireless merged with A Wireless and, in 2017, A Wireless rebranded its corporate name to Victra.

11. During her time as Store Manager, Barker's store was consistently a top performer compared to other Victra locations both inside and outside her region, which consisted of numerous Sales Achievement and Outstanding Performance Awards, among others.

12. While working as the Store Manager, Barker was earning, at most, $12.50/hour. Her male counterparts working as store managers at other locations in Wisconsin were earning $15-$17/hour to perform the same work, including, for example, supervision of a similar number of store employees for stores with similar amounts of revenue.

13. During the years she worked as a Store Manager, Barker repeatedly requested an increase in wages to match her male counterparts, which Victra denied. No reason was given by

2

Victra for denying Barker equal compensation to other male Store Managers, which included David Miller, Nathan Madsen, and Brandon Olson.

14. At one point, a District Manager for Victra denied Barker's request for a raise because there was "not enough money in the pool to go around, and [Victra] needed to pay the men more to retain them."

15. In October 2016, Barker was promoted to District Manager in Victra's business-to-business division.

16. In this role, Barker was given multiple areas outside of her designated territory. This increase in workload went uncompensated. Victra informed Barker that she would be eligible for a salary increase and bonus opportunities to compensate the added work, but those benefits never materialized.

17. In October 2018, Barker accepted a position as District Manager of Victra's retail stores located in central Wisconsin. To accept the position, Barker had to relocate from Ashland, Wisconsin to Marshfield, Wisconsin. To assist in her relocation, Barker received a $20,000 relocation package.

18. In her role as District Manager for central Wisconsin, Barker was responsible for managing 14 retail stores operated by Victra, overseeing around 50 Victra employees. On average, her male counterparts oversaw only 7 locations.

19. Under Barker's supervision, her district was a top performer in her region—one of five districts in the state of Wisconsin.

20. Barker's starting annual salary in the role of District Manager was $45,000.

21. During her tenure as District Manager, male employees with equal or less experience and seniority earned substantially more than she did in the same role.

3

22. For example, Benjamin Madsen, a male counterpart working as a District Manager in the northern Wisconsin region, had an annual salary of $90,000 to perform the same work, just in a different part of the state.

23. Other male comparators that earned substantially more that Barker located throughout Wisconsin included Lukas Bowers (Green Bay region), Matt Smith (northern Wisconsin region), Jason Nye (southern Wisconsin region), Jason Ciesiolka, David Mclone, and Josiah Woodman, who replaced Barker as District Manager of the central Wisconsin region upon her termination.

24. In 2019, Victra underwent a large hiring initiative that also involved equalizing compensation among current and newly-acquired employees.

25. By late September 2019, Barker's salary had increased to $60,000 as a result of these initiatives. However, her male counterparts' salaries remained at $90,000.

26. In September 2019, Barker's mother was diagnosed with Stage IV cancer. Barker then began splitting her time between Marshfield, Wisconsin while working, and Ashland, Wisconsin when necessary to assist her mother.

27. Barker requested and received approval for this arrangement with her superiors, and communicated such travel arrangements with the Victra locations she managed. At no point were any complaints raised regarding Barker's commuting arrangement.

28. After obtaining approval from her manager, Barker used her company-issued vehicle to travel to and her office in Marshfield to Ashland when visiting her mother. It was customary practice for Victra employees to drive company-issued vehicles to and from their residences to work each day.

4870-1118-3418.6

29. During a Victra meet-and-greet event in early October 2019, Barker discussed her situation with Aaron Luettinger ("Luettinger"), Victra's Regional Director of the Wisconsin region, and Kirby Locke ("Locke"). During the conversation, Barker suggested she may need to take leave under the Family Medical Leave Act ("FMLA") to continue assisting her mother given her mother's serious medical condition.

30. Both Luettinger and Locke advised Barker not to take FMLA leave, and reconfirmed that Victra supported her current commuting arrangement. Thereafter, Barker continued to spend her off-time in Ashland assisting her mother.

31. Victra did not maintain or provide any written or oral policy that prohibited Barker from driving her company-issued vehicle when traveling to and from her Marshfield office.

32. At no point during her employment did Barker use her company-issued vehicle for personal errands.

33. On October 25, 2019, Barker received a phone call from Adam Shaffer, Victra's Vice President of Training and Field Human Resources at the time, to update information related to her relocation package. On the call, Barker discussed her commuting arrangements, noting she had approval from both Luettinger and Kirby, in addition to Human Resources Manager Kimberly Savick and Area Vice Presidents Scott Brady and Preston Bennett.

34. Shortly after this conversation, Barker then received a call from Luettinger and a Victra Employee Development Manager, who terminated Barker for her "personal use" of her company-issued vehicle.

35. Barker fervently denied any violation of Victra's Employee Handbook or Driver & Vehicle Policy, noting that she had obtained prior approval of her commuting arrangement from numerous superiors.

4870-1118-3418.6

36. Throughout Barker's employment, Victra did not maintain any policy prohibiting employees from driving company-issued vehicles to and from their residences to Victra locations, which may be considered job-related travel.

37. On October 26, 2019, Barker requested reinstatement directly to two Victra employees: Julie Skiba, Senior Vice President of Human Resources, and Richard Balot, Founder and CEO.

38. Victra refused to respond to Barker's requests for reinstatement.

39. After her termination, Barker requested her personnel records from Victra's human resources department on numerous occasions.

40. Under Wis. Stat. § 103.13, employers are required to permit an employee inspect his or her personnel records within seven days of an employee's request. Such records include those relating to employment, promotion, transfer, additional compensation, and termination.

41. Rather than grant Barker's request to inspect her personnel records, Victra threatened Barker with a lawsuit to recover her relocation package funds ($20,000.00) she received when transferring to Marshfield.

42. Victra's failure to allow Barker inspect her personnel records within seven days of her request is a blatant violation of Wisconsin law.

43. Barker received her last paycheck from Victra on November 7, 2019.

## COUNT I
## VIOLATION OF THE EQUAL PAY ACT (29 U.S.C. § 206(d)(1))

44. Barker incorporates the statements and allegations set forth above as if fully set forth herein.

45. Victra was at all material times an employer within the meaning of the EPA.

46. Barker was at all material times an employee within the meaning of the EPA.

47. As an employee of Victra, Barker performed work equal (and often greater) in skill, effort, and responsibility to those of certain male employees under similar working conditions.

48. In both her role as Store Manager and District Manager, certain male employees, including those identified in this Complaint, were paid a comparatively higher hourly wage and annual salary than Barker for their level of experience.

49. The pay discrepancy between Barker and other male employees was based on sex.

50. Victra discriminated against Barker by subjecting her to less, and therefore discriminatory, pay and benefits in violation of the EPA.

51. Victra, by its representatives' actions, willfully, maliciously, and intentionally, with reckless indifference to the rights of Barker, discriminated against her in violation of the EPA and by doing so is subject to an award of liquidated damages.

52. As a result of Victra's discriminatory conduct, Barker has in the past and continues to suffer damages including, but not limited to, lost wages and employment benefit, future earnings, and other remunerations of employment.

## COUNT II
## VIOLATION OF WISCONSIN'S OPEN RECORDS LAW (WIS. STAT. § 103.13)

53. Barker incorporates the statements and allegations set forth above as if fully set forth herein.

54. Victra was at all material times an employer within the meaning of Wis. Stat. § 103.13.

55. Barker was at all material times an employee within the meaning of the Wis. Stat. § 103.13.

4870-1118-3418.6

56. Victra has an obligation to permit its employees inspect any personnel documents used to determine qualifications for employment, promotion, transfer, additional compensation, termination, and other disciplinary actions.

57. Per Wis. Stat. § 103.13, any "inspection must occur at a location reasonably near the employee's place of employment during normal working hours."

58. Barker sent no less than eight requests, in writing, to Victra seeking to review her personnel records, including a request to Julie Skiba on October 26, 2019.

59. Once requested, Victra had seven working days to make Barker's records available for inspection. Therefore, Victra was required to provide Barker's records on November 5, 2019 at the absolute latest.

60. Victra failed to make Barker's personnel records available for review on that date. Rather, Victra told Barker that she could travel from Wisconsin to North Carolina to inspect her personnel records. This offer does not comply with Wisconsin law's requirement that inspection shall be reasonably located near Barker's place of employment.

61. Alternatively, Barker made numerous attempts to set up payment to receive the records. Victra once again failed to make the records available for inspection.

62. Each day Victra refused or failed to comply with Barker's request amounts to a separate violation of Wis. Stat. § 103.13.

63. To the date of the filing of this Complaint, Victra has not provided Barker with her personnel records.

64. For nearly three years, Victra deprived and continues to deprive Barker of her statutory right to inspect her personnel records that would have provided her with more detailed information regarding her discriminatory compensation and termination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erika Barker requests relief in its favor and against Defendant ABC Phones of North Carolina, Inc. d/b/a Victra as follows:

    a.    Judgment in favor of Plaintiff in Counts I-II above;

    b.    An award of past and future loss of wages and benefits, plus interest;

    c.    An award of liquidated damages equal to the sum amount of back pay and interest;

    d.    An award of Barker's costs and attorneys' fees;

    e.    An award of such other further and different relief as the Court deems just and equitable.

## JURY DEMAND

65.    Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury and requests that trial of this case takes place in Eau Claire, Wisconsin.

Dated: October 25, 2022.

Erika Barker, Plaintiff,

By: *s/ John P. Barrett*
John P. Barrett, #1119142
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
John.Barrett@koleyjessen.com

AND

*s/ Patrice D. Ott*
Patrice D. Ott, *pro hac vice to be filed*, Neb.
Bar #24435
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
Patrice.Ott@koleyjessen.com

Attorneys for Plaintiffs.

**CERTIFICATE OF SERVICE**

On October 25, 2022, a true and correct copy of the foregoing was mailed via USPS Certified mail to the following party:

Corporation Service Company
8040 Excelsior Drive, Ste. 400
Madison , WI 53717

*s/ John P. Barrett*
John P. Barrett

4870-1118-3418.6